UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KAREN CAMPBELL, on her behalf and on behalf of those similarly situated,

    Plaintiff,

v.                                    Case No: 2:15-cv-695-FtM-99MRM

PINCHER'S BEACH BAR GRILL INC.,

    Defendant.

**OPINION AND ORDER**

This matter comes before the Court on plaintiff's Motion for an Order Permitting Supervised Notice of This Action to Potential Opt-in Plaintiffs and Conditional Certification of This Case as a Collective Action (Doc. #14) filed on January 25, 2016. Defendant filed a Response in Opposition (Doc. #18) on February 19, 2016, to which plaintiff filed a Reply (Doc. #24) on March 15, 2016.

**I.**

Plaintiff Karen Campbell (Campbell) filed her Complaint (Doc. #1) against her former employer, Pinchers Beach Bar Grill, Inc. (defendant or Pinchers), on her own behalf and on behalf of other similarly situated individuals, for minimum wage and overtime compensation relief under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-19.  Nicky Grach (Grach) and Aleesha Nalewyko (Nalewyko) filed Consents to Join (Docs. ##13-1, 25-1) the case on

January 22, 2016 and March 15, 2016, respectively. To date, no others have joined Campbell, Grach, and Nalewyko as plaintiffs. The underlying facts, as set forth in the Complaint, are as follows:

Campbell was employed by Pinchers from January, 2013 through July 8, 2015 as a non-exempt server/bartender at its Fort Myers Beach location (Tiki location). (Doc. #1, ¶ 18.) Campbell's job duties included serving food and drinks to customers. (Id. ¶ 19.) Pinchers compensated Campbell by paying her the tipped minimum wage rather than regular minimum wage for all hours worked. (Id. ¶ 20.) Campbell did not retain all of the tips she earned and instead was required to contribute tips to a "tip share" or "tip pool." (Id. ¶ 22.) The tips were then redistributed to other employees, some of which were non-tipped employees, including managers, or were redirected to the restaurant itself. (Id. ¶ 24.) Due to Pinchers distributing tips to management and non-tipped employees, Pinchers was required to compensate Campbell, and those similarly situated, at the regular minimum wage rate. (Id. ¶ 26.) Additionally, Pinchers did not provide its servers/bartender the notice required by Section 203(m). (Id. ¶ 28.) As a result of Pinchers' improper retention and distribution of the servers and bartenders' tips, Pinchers failed to pay Campbell, and those similarly situated, the statutory minimum wage as required by the FLSA. (Id. ¶ 29.) Campbell also alleges that

she, and those similarly situated, were not compensated at a rate of one and one-half their regular rate of pay for those hours worked in excess of forty in a workweek in violation of the FLSA.[1] (Doc. #1, ¶¶ 37-47.)

Campbell now seeks conditional certification as a collective action and requests that the Court permit plaintiff to facilitate notice to opt-in potential collective action plaintiffs. (Doc. #14.) Pursuant to Campbell's Motion to Certify, Campbell seeks to facilitate notice to

> all servers and bartenders who worked for Defendant, [Pinchers Beach Bar Grill Inc.] . . ., in Florida, within the three (3) years preceding the date this action was filed, and through the date notice is mailed in this matter, who were subject to an illegal pay practice and policy pursuant to which they were not provided the legally required notice of the employer's intention to take a tip credit, and who were required to participate in a mandatory tip pool in an amount equivalent to 3% of their total daily sales, which tips were shared with non-tipped employees and/or management level employees.

(Id. at 1.)[2]

---

[1] It appears that plaintiff is not seeking to certify a class based upon the unpaid overtime compensation allegations included within her Complaint. (See id.; Doc. #14-1.)

[2] The Court notes that plaintiff's proposed notice (Doc. #14-1) contains a similar class description:

> Server or bartender for Pinchers Beach Bar Grill Inc. and/or other Pinchers Crab Shack location in Florida at any time from November 5, 2012, to the present and were not provided notice of the employer's intention to take a tip credit to satisfy minimum wage obligations, and/or were required to participate in a mandatory tip pool in which tips were shared with non-tipped employees and/or management level employees . . . .

Defendant opposes plaintiff's Motion to Certify on several grounds. (Doc. #18.) First, Pinchers argues that plaintiff has failed to establish that other similarly situated individuals desire to join the action.[3] (Id. at 2, 7-9.) Second, Pinchers asserts that plaintiff and the putative opt-ins are not similarly situated and a class would be unmanageable due to the individualized nature of the claims and defenses that will be asserted. (Id. at 2-3, 9-17.) Third, defendant asserts that even if the Court allows conditional certification, plaintiff's proposed notice is insufficient. (Id. at 17-19.)

## II.

### A. Conditional Certification Standard

An action to recover unpaid compensation under the FLSA may be maintained

> against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action

---

(Id. at 2.) The Court further notes that the class description contained in the Motion to Certify (Doc. #14) and Proposed Notice (Doc. # 14-1) is narrower than that described in the Complaint. Because the class description is narrower than, and does not exceed, the class description in the Complaint, the Court does not deem this problematic. Cf. Herrera v. U.S. Serv. Indus. Inc., No. 2:12-cv-258-FtM-29DNF, 2013 WL 1610414, at *2-3 (M.D. Fla. Apr. 15, 2013); Pimentel v. HGA Quest, Inc., No. 2:12-cv-176-FtM-29DNF, 2013 WL 1464273, at *2 (M.D. Fla. Apr. 11, 2013).

[3] Since the filing of the Motion to Certify, a Consent to Join has been filed by Aleesha Nalewyko. (Doc. #25-1.) Aleesha Nalewyko was also employed at the Tiki location. (Doc. #29.)

> unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). The purpose of such a collective action is "to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer." Prickett v. Dekalb County, 349 F.3d 1294, 1297 (11th Cir. 2003).

To demonstrate that plaintiffs are "similarly situated," an opt-in plaintiff "need show only that their positions are similar, not identical, to the positions held by the putative class members." Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1217 (11th Cir. 2001) (quotations and citations omitted). The Eleventh Circuit has adopted a two-tiered approach to certification, as described in Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995):

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision-usually based only on the pleadings and any affidavits which have been submitted-whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds

> as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. . . .

Hipp, 252 F.3d at 1218.

Before providing notice, a plaintiff must offer a "reasonable basis" for his assertion that there are other similarly situated employees who desire to opt-in. Morgan v. Family Dollar Stores, 551 F.3d 1233, 1260 (11th Cir. 2008); Dybach v. Fla. Dep't of Corr., 942 F.2d 1562, 1567 (11th Cir. 1991). At this stage, the Court applies a "fairly lenient standard," Anderson v. Cagle's Inc., 488 F.3d 945, 953 (11th Cir. 2007), although there must be more than counsel's unsupported assertions, Morgan, 551 F.3d at 1261. "Evidence of similarly situated employees who desire to opt in may be based on affidavits of other employees, consents to join the lawsuit filed by other employees, or expert evidence on the existence of other similarly situated employees," but "plaintiff's or counsel's belief in the existence of other employees who desire to opt in and unsupported expectations that additional plaintiffs will subsequently come forward are insufficient to justify certification of a collective action and notice to a potential class." Hart v. JPMorgan Chase Bank, N.A., No. 12-CV-00470, 2012

WL 6196035, at *4 (M.D. Fla. Dec. 12, 2012) (internal citations and quotation marks omitted).

**B.   Analysis**

   **(1)   Similarly Situated Individuals**

Defendant argues that plaintiff cannot establish that she is similarly situated with the putative plaintiffs because: (1) some of the putative plaintiffs signed arbitration agreements, (2) any alleged deviation from Pinchers' otherwise lawful practices would require individualized analyses, (3) plaintiff is referring to "key employees" which are not "managers" under the FLSA, and (4) the tip-pooling allegations relating to the painting performed by some employees should be limited to the Tiki location.  (Doc. #18, pp. 9-17.)

Here, plaintiff has alleged that there are similarly situated individuals that: were employed by defendant as servers or bartenders within the past three years, were not provided notice of defendant's intention to take a tip credit, and were subjected to an unlawful tip pool that was distributed to some non-tipped employees. (Doc. #1, ¶¶ 54, 56-57; Doc. #14, pp. 2-4.)  As a result of this common pay practice, plaintiff and putative plaintiffs were denied full and proper payment of their minimum wages.  (Doc. #1, ¶ 59; Doc. #14, p. 4.)  The Court finds, at least insofar as the allegations relate to the Fort Myers Beach Pinchers location (Tiki location), that the other employees are similarly situated

to plaintiff in regard to their job requirements and pay provisions.

Defendant argues that it provided adequate notice to its employees that it was compensating them at the tipped minimum wage. (Doc. #18, pp. 4-6, 10-12.)  Defendant points to Ide v. Neighborhood Restaurant Partners, LLC, 32 F. Supp. 3d 1285 (N.D. Ga. 2014), aff'd per curiam, --- F. App'x ---, No. 15-11820, 2016 WL 3564379, at *1 (11th Cir. July 1, 2015), to support its assertion that the Court is able to deem that defendant provided proper notice of its intent to pay at the tipped minimum wage at this stage of the proceedings.  In Ide, however, plaintiff acknowledged the existence of the notice to pay at the tipped minimum wage, but challenged the sufficiency of the notice. Id. at 1292-93.  That is not the issue in the case at hand.  Plaintiffs have clearly alleged that they did not receive any notice that they were receiving anything other than the regular minimum wage and, at this stage of the proceedings, the Court declines to weigh evidence and make factual determinations. See Morgan, 551 F.3d at 1261 ("[A]t the second stage . . . . the district court must consider whether the defenses that apply to the opt-in plaintiffs' claims are similar to one another or whether they vary significantly." (citation omitted)).

In addition, defendant argues that its "key employees" are not managerial employees.  The Court also finds this argument

improper at the notice certification stage. Id.; Pena v. Handy Wash, Inc., 28 F. Supp. 3d 1289, 1300 (S.D. Fla. 2014) ("[T]he Court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations. Indeed, a court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." (citation omitted)). Defendant also argues that because some putative plaintiffs signed arbitration agreements, they are not similarly situated. (Doc. # 18, pp. 9-10.) Many courts have held that issues regarding arbitration agreements executed by employees are more properly examined at the second tier of the certification process because they involve merit-based determinations. See Racey v. Jay-Jay Cabaret, Inc., No. 15 Civ. 8228 (KPF), 2016 WL 3020933, at *5 (S.D.N.Y. May 23, 2016); Williams v. Omainsky, No. CIVIL ACTION 15-0123-WS-N, 2016 WL 297718, at *7 n. 14 (S.D. Ala. Jan. 21, 2016) (collecting cases); Sealy v. Keiser Sch., Inc., No. 11-61426-CIV, 2011 WL 7641238, at *3 (S.D. Fla. Nov. 8, 2011).[4] This Court agrees.

---

[4] The Court takes note of the decision in Delano v. MasTec, Inc., No. 8:10-CV-320-T-27MAP, 2011 WL 2173864, at *1 (M.D. Fla. June 2, 2011). In Delano, there was uncontroverted evidence that some of the opt-in plaintiffs had signed arbitration agreements. The court ultimately denied plaintiffs' motion for certification holding that "[a]s Plaintiffs have been able to identify only three potential opt-ins not subject to the mandatory arbitration in fifteen months and after substantial discovery (including depositions), the Court finds that Plaintiffs have not demonstrated a reasonable basis for crediting their assertions

Accordingly, the Court finds that defendant's arguments regarding the arbitration agreements are more properly suited to be addressed at the decertification stage.

Lastly, defendant asserts that the class should be limited to the Tiki location because employees at the other locations are not similarly situated. (Doc. #18, pp. 16-18.) Plaintiff and the two opt-in plaintiffs were employed at the Tiki location on Fort Myers Beach. (Docs. ##1, 14, 29.) The only basis that plaintiff has for establishing that a "common pay policy or practice" existed of improperly utilizing the tip pool among all locations is a case that was previously filed by an employee against defendant and that the various locations share a website, have the same mailing address, and have the same officers. (Doc. #14, pp. 2-3.) In response, defendant has provided 44 affidavits, 40 of which are from current and former employees at locations other than the Tiki location.[5] This Court finds plaintiff's reliance on one other

---

that other aggrieved employees exist who wish to opt-in to this action." Id. at *6. The Court finds the underlying case distinguishable in light of the fact that no evidence has been presented that any of the opt-ins are subject to the arbitration agreement and, by defendant's own admission, it did not roll out the arbitration agreement at its locations until October 2015 – the month before this action was filed. (See Doc. #18, p. 9 n. 7.) Further, the Eleventh Circuit has upheld a district court's refusal to enforce arbitration agreements in collective actions under certain circumstances. See Billingsley v. Citi Trends, Inc., 560 F. App'x 914, 922-24 (11th Cir. 2014).

[5] The 44 declarations are comprised of the following: four from the Key West location, four from the Gulf Coast Town Center in Fort Myers, five from the Shops at Wiregrass Tampa location,

case that has since been dismissed is not enough to "engage defendant's affidavits to the contrary" (Doc. #18-1) and establish that employees located at the 10 other Pinchers locations are similarly situated to plaintiff. See Wombles v. Title Max of Ala., Inc., No. Civ.A.303CV1158CWO, 2005 WL 3312670, at *3 (M.D. Ala. Dec. 7, 2005)(finding plaintiffs' affidavits and two consents to join were not sufficient to engage defendant's 46 affidavits to the contrary). The Court acknowledges its previous opinion in Smith v. Cable Wiring Specialist, Inc., No. 2:14-cv-277-FtM-29DNF, 2014 WL 4795160, at *2 (M.D. Fla. Sept. 25, 2014). In Smith, in finding that plaintiff had provided a reasonable basis for his assertion that there were additional similarly situated individuals who wished to opt in, the Court considered the fact that eleven former employees participated in their own separate FLSA suit against the employer. Id. The Court finds that its decision in Smith distinguishable because in addition to its consideration of the former lawsuit, there were also two declarations, both of which listed eight individuals that would

---

three from The Marina at Edison Ford Fort Myers location, four from the Naples location, four from the Tiki Location, three from the Tarpon Point Cape Coral location, four from the San Carlos Fort Myers Beach location, three from the Carrollwood location, two from the Bonita Springs location, six from the Lakewood Ranch location, one that worked at different locations and then became a dock master, and one division manager. (Id.) Of the 44 declarations, only two are from former employees. (Id.) The remainder are from employees that are currently employed with defendant. (Id.)

likely join the case if given notice.  Id.  Here, plaintiff is relying solely upon the other case and the interrogatories answered therein for her assertion that there was a common pay policy and/or practice among the 11 Pinchers locations.  "[F]ederal courts across the Middle and Southern Districts of Florida have routinely denied requests for conditional certification where plaintiffs attempt to certify a broad class based only on the conclusory allegations of a few employees." Simpkins v. Pulte Home Corp., No. 6:08-cv-130-Orl-19DAB, 2008 WL 3927275, at *2 & n. 3 (M.D. Fla. Aug. 21, 2008) (collecting cases).

Accordingly, the Court finds that plaintiff has failed to provide a reasonable basis that she is similarly situated to the employees at the other 10 Pinchers locations.[6]  The Court does find, however, that plaintiff has provided a reasonable basis that she is similarly situated to the employees at the Tiki location and limits any potential class accordingly.

**(2) Existence of Other Individuals Who Desire to Opt In**

In support of their assertion that there are additional similarly situated individuals who wish to opt in, Campbell points out that a consent to join has been filed by Nicky Grach (Doc. #13-1) and an action was filed by another employee alleging the

---

[6] This resolves defendant's argument that issues relating to painting performed by some employees should be limited to the Tiki location.

same pay violations, (Doc. #14, pp. 11-15). The Court notes that since the filing of the Motion for Class Certification, a consent to join was filed by another employee, Aleesha Nalewyko. (Doc. #25-1.) Attached to plaintiff's Motion for Class Certification are declarations of Karen Campbell and Nicky Grach. (Docs. ##14-4, 14-5.) The declarations state that each individual "believes" that if other servers received notice of this action, they would want to join to recover wages owed to them. (Doc. #14-4, p. 3; Doc. #14-5, p. 3.) Additionally, Karen Campbell's declaration states that upon hearing of the lawsuit, other servers and bartenders contacted her and expressed their desire to join the lawsuit. (Doc. #14-4, p. 3.) Campbell's declaration does not refer specifically to any individuals who wish to join. (Doc. #14-4.)

Defendant asserts that plaintiff has not produced sufficient evidence to indicate that there are additional similarly situated individuals who wish to opt-in and that the arbitration agreements automatically exclude some potential opt-ins. (Doc. #18, pp. 7-10.) Defendant points to the 44 declarations of former and current employees in its Response. (Doc. #18-1.) Four of the declarations provided by defendant are from employees that worked at the Tiki location — the location where plaintiff and the two opt-ins were employed. (Id. at 46-56.) Of the four declarations of past or current employees at the Tiki location, each declarant states that

they are unaware of any servers or bartenders interested in joining any lawsuit against Pinchers. (Doc. #18-1, pp. 48, 50, 52, 55.) The Court will limit its consideration to the four declarations from past and current employees of the Tiki location due to its finding that the plaintiff is not similarly situated to employees from the other locations.

A review of the relevant case law confirms that no firm line has been drawn regarding the number of opt-ins necessary, or magic language required, to convince the court that additional putative plaintiffs will join or desire to join the action. See Ciani v. Talk of The Town Rests., Inc., No. 8:14-cv-2197-T-33AEP, 2015 WL 226013, at *2 (M.D. Fla. Jan. 16, 2015) (finding presence of two opt-in plaintiffs, each having filed a declaration describing their working condition sufficient to show others desire to join); Teahl v. The Lazy Flamingo, No. 2:13-cv-833-FtM-38CM, 2015 WL 179367, at *5-6 (M.D. Fla. Jan. 14, 2015) (finding declaration and two opt-ins sufficient to provide a reasonable basis that others desire to join); Gonzalez v. TZ Ins. Sols., LLC, No. 8:13-cv-2098-T-33EAJ, 2014 WL 1248154, at *2 (M.D. Fla. Mar. 26, 2014) (finding that "[a]lthough there is no magic number requirement for the notice stage," five opt-in plaintiffs are sufficient to convince the court that others desire to join the action); Robbins-Pagel v. Puckett, No. 6:05-cv-1582-Orl-31DAB, 2006 WL 3393706, at *2 (M.D. Fla. Nov. 22, 2006) (finding affidavits submitted by

plaintiff and two additional former employees sufficient to show that others desire to join). Although the burden of showing that there are other employees who desire to opt in is minimal, this "minimal burden should not be confused with a nonexistent burden." Goodrich v. Covelli Family Ltd. P'ship, No. 8:11-cv-1715-T-33TBM, 2012 WL 1081473, at *3 (M.D. Fla. Mar. 30, 2012).

While the Court agrees that a valid arbitration clause is enforceable in an FLSA collective action, see Walthour v. Chipio Windshield Repair, LLC, 745 F.3d 1326 (11th Cir. 2014), it does not find defendant's allegation that an arbitration agreement was rolled out in October 2015 to be dispositive proof that others do not desire to join. While some courts have been able to conclusively establish that named plaintiffs were prohibited from bringing an action as a result of an arbitration agreement, other courts have held that the fact that some members of a proposed class may be subject to an arbitration provision does not preclude the conditional certification of a class. See Saravia v. Dynamex, Inc., 310 F.R.D. 412, 424 (N.D. Cal. 2015); Bowman v. Dow Run Res. Corp., No. 4:13 CV 2519 CDP, 2014 WL 3579885, at *5 (E.D. Mo. July 21, 2014). As discussed supra, issues regarding the arbitration agreements in this case are more properly addressed at the decertification stage or on a motion to compel arbitration.

Under the "fairly lenient standard" appropriate at this stage of the proceedings, the Court is satisfied, however, that plaintiff

has provided a reasonable basis for her assertion that there are additional similarly situated individuals that worked at the Tiki location who wish to opt-in. See Scheall v. NICAEA Acad., Inc., No. 2:14-cv-653-FtM-29DNF, 2015 WL 3991041, at *2 (M.D. Fla. June 30, 2015) (finding presence of two opt-ins in addition to plaintiff and affidavits of plaintiff and one opt-in sufficient to show there are similarly situated individuals who wish to opt-in); Kirk v. Dr. Goodroof, Inc., No. 2:14-cv-639-FtM-29CM, 2015 WL 1138445, at *1-2 (M.D. Fla. Mar. 13, 2015) (finding plaintiff and one other opt-in's testimony sufficient to show others desire to join).

**(3) Notice**

Lastly, defendant argues that should the class be conditionally certified, (1) the notice fails to contain information typically contained in notices in the Middle District of Florida, (2) the class and notice should be limited to the Fort Myers Beach Tiki location, (3) plaintiff should not be allowed to provide notice via email along with a reminder notice, (4) a ninety day notice period is excessive and should be limited to 45 or 60 days, and (5) plaintiff's request to post notices where servers and bartenders are currently employed should be denied because notice by mail is sufficient. (Doc. #18, pp. 17-19.)

First, defendant very briefly asserts that plaintiff's notice does not contain information typically found in notices in the Middle District of Florida. (Id. at 18.) Defendant claims that

the notice does not clearly inform potential class members of their responsibilities and potential liability for Pinchers' costs if their claims are unsuccessful. (Id. at 18 n. 12 (citing Trentman v. RWL Commc'ns, Inc., No. 2:15-cv-89-FtM-38CM, 2015 WL 2062816, at *4 (M.D. Fla. May 4, 2015)).  The Court agrees with defendant and finds that the proposed notice should warn potential class members that, should defendant win, they may be held responsible for Pinchers' defense costs. Smith, 2014 WL 4795160, at *3; Trentman, 2015 WL 2062816, at *4.

Defendant also objects to plaintiff sending notices by first class mail and via email, in addition to sending a follow-up reminder notices.  After consideration, the Court approves sending notices to the class via first class mail as well as via email. "A number of courts have determined that email is an inexpensive and appropriate means of delivering notice of an action to a class."  Palma v. Metropcs Wireless, Inc., No. 8:13-cv-698-T-33MAP, 2014 WL 235478, at *2 (M.D. Fla. Jan. 22, 2014).  However, the Court agrees with defendant's objection to sending follow-up reminder notices.  "Reminder notices are unnecessary because they are redundant and could be interpreted as encouragement by the Court to join the lawsuit."  Smith, 2014 WL 4795160, at *3 (citing Palma, 2014 WL 235478, at *3).

Defendant also argues that a 90 day opt-in period is too long, and should instead be 45 or 60 days.  (Doc. #18, p. 19.)  The

Court disagrees as courts routinely allow for a 90 day opt-in period.  See Harris v. Performance Transp., LLC, No. 8:14-cv-2913-T-23EAJ, 2015 WL 1257404, at *6 (M.D. Fla. Mar. 18, 2015); Issacs v. One Touch Direct, LLC, No. 8:14-cv-1716-T-30EAJ, 2015 WL 248658, at *3 (M.D. Fla. Jan. 20, 2015); Alequin v. Darden Rests., Inc., No. 12-61742-CIV, 2013 WL 3939373, at *8 (S.D. Fla. July 12, 2013).

Lastly, defendant objects to plaintiff's request to post a notice at the Tiki location, asserting that notice by mail is just as effective.  (Doc. #18, p. 18.)  As recognized previously by this Court, "requests [to post notices] are routinely granted and the Court sees no reason to divert from that standard of practice in this case."  Scheall, 2015 WL 3991041, at *3 (citing Fiore v. Goodyear Tire & Rubber Co., No. 2:09-cv-843-FtM-29SPC, 2011 WL 867043, at *4 (M.D. Fla. Mar. 10, 2011)).  But see Ciani, 2015 WL 226013, at *6; Gonzalez, 2014 WL 1248154, at *6.

Plaintiff is directed to provide the Court with a revised proposed Notice.  The Court will address class discovery within its order on the revised proposed Notice.

Accordingly, it is hereby

**ORDERED:**

1.  Plaintiff's Motion for an Order Permitting Supervised Notice of This Action to Potential Opt-in Plaintiffs and Conditional Certification of This Case as a Collective Action (Doc. #14) is **GRANTED in part and DENIED in part.**

    2.   Conditional certification is granted for the putative class of individuals who (1) worked at defendant's Fort Myers Beach (Tiki location) as servers or bartenders during the past three years; (2) were not provided proper notice of defendant's intention to compensate them at the tipped minimum wage; and (3) were required to participate in a mandatory tip pool in which tips were shared with non-tipped employees and/or management level employees.

    3.   In accordance with this Opinion and Order, plaintiff shall file a revised proposed Notice on or before July 21, 2016.

    4.   Defendant shall file any objections to plaintiff's revised proposed Notice on or before July 28, 2016.

**DONE and ORDERED** at Fort Myers, Florida, this __7th__ day of July, 2016.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record