UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KAREN CAMPBELL, on her behalf and on
behalf of those similarly situated

     Plaintiff,

v.                              Case No:  2:15-cv-695-FtM-99MRM

PINCHER'S BEACH BAR GRILL INC.,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

Before the Court is the Joint Motion for Approval of Settlement Agreement and Entry of an Order of Dismissal With Prejudice (Doc. 59) filed on May 2, 2017; the Joint Supplemental Brief Regarding Settlement Approval (Doc. 65) filed on July 14, 2017; and the Notice of Filing Signature Page of Steven Wood (Doc. 67) filed on August 17, 2017. Plaintiff Karen Campbell; Opt-In Plaintiffs Daniel Allers, Tracy Babbit, Lisa Beilman, Jenny Cole, Nicky Grach, Caitlin Holbrook, Emma Hopegood, Michael Kayner, Eva Kozielec, Deborah Frick a/k/a Deborah LaSala, Iris Lopez, Charles Magouirk, Stephanie Martinez, Michael Martinez, Thomas McQuade, Nicholas Measures, Valerie Morehouse, Jillian Morehouse, Aleesha Nalewyko, Erin Lexi Rosenau, Elizabeth Sellers, Deric Sorensen, and Steven Wood; and Defendant Pinchers Beach Bar Grill, Inc. request that the Court approve the parties' settlement of the Fair Labor Standards Act ("FLSA") claim and dismiss this action with prejudice. (*See* Doc. 59 at 1).

**Preliminary Issues**

As a preliminary matter, Plaintiff Karen Campbell filed an Amended Complaint (Doc. 39) on September 13, 2016, on behalf of herself and those similarly situated, claiming a violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* Prior to filing the Amended Complaint,

the Honorable John E. Steele, United States District Judge, entered an Opinion and Order (Doc. 33) granting conditional certification. Pursuant to the Opinion and Order:

> Conditional certification is granted for the putative class of individuals who (1) worked at defendant's Fort Myers Beach (Tiki location) as servers or bartenders during the past three years; (2) were not provided proper notice of defendant's intention to compensate them at the tipped minimum wage; and (3) were required to participate in a mandatory tip pool in which tips were shared with non-tipped employees and/or management level employees.

(Doc. 33 at 19). After the notice period expired, twenty-three (23) Opt-In Plaintiffs joined the action. (Doc. 59 at 3). Prior to final certification or decertification of the class, the parties reached an agreement to settle this action at mediation. (*See* Doc. 57).

When the Joint Motion for Approval of Settlement Agreement (Doc. 59) was initially filed, the Court raised specific concerns relating to approval of the settlement, which the parties have addressed. (*See* Doc. 60).

The first concern the Court raised was that the case was only *conditionally* certified as a collective action and the Court had not reached a final determination as to whether this case would proceed as a certified collective action or whether it was to be decertified. (Doc. 60 at 2). Jurists on this Court have found that a court must reach a final determination as to certification before approving a proposed settlement. *See Ruddell v. Manfre*, No. 3:14-CV-873-J-34MCR, 2015 WL 7252947, at *1 (M.D. Fla. Nov. 17, 2015); *see also Hosier v. Mattress Firm, Inc.*, No. 3:10-CV-294-J-32JRK, 2012 WL 2813960, at *2 (M.D. Fla. June 8, 2012), *report and recommendation adopted*, No. 3:10-CV-294-J-32JRK, 2012 WL 2838610 (M.D. Fla. July 10, 2012); *Burton v. Util. Design, Inc.*, No. 607-CV-1045ORL-22KRS, 2008 WL 2856983, at *2 (M.D. Fla. July 22, 2008). Thus, the Court required the parties to brief the issue of whether the Court must make a final determination as to certification prior to approving the settlement. (*See* Doc. 60 at 4).

In their Joint Supplemental Brief (Doc. 65), the parties contend that there is no binding precedent that requires a "Stage II analysis be conducted prior to approving a collective settlement." (Doc. 65 at 2). The parties also cite to other unpublished opinions in the Middle District of Florida in which jurists have approved collective settlements without a final certification resolution or analysis. (*Id.* at 3; *see also id.* at 3-4 n.3) (reviewing cases).

The Court finds at least one of those cases cited by the parties – *Czopek v. Tbc Retail Grp., Inc.*, No. 8:14-CV-675-T-36TBM, 2016 WL 7116112, at *4 (M.D. Fla. Nov. 7, 2016), *report and recommendation adopted*, No. 8:14-CV-675-T-36TBM, 2016 WL 7104187 (M.D. Fla. Dec. 6, 2016) – to be highly persuasive. In *Czopek*, the plaintiffs brought suit on behalf of themselves and others similarly situated for various violations of the FLSA. *Id.* at *1. This Court granted the plaintiffs' motion for conditional certification. *Id.* The parties ultimately decided to resolve the case, including the resolution of "certain disputes with regard to Plaintiffs who were precluded from litigating their claims in this Court: (1) those Plaintiffs whose claims fell outside of the limitations period; and (2) those Plaintiffs who were subject to a valid arbitration agreement." *Id.* at *4. The Court approved the settlement at the conditional certification stage and included as a part of the settlement those plaintiffs who were allegedly precluded from litigating their claims. *Id.* at *1.

Similarly, to resolve this case and for settlement purposes only, the parties have reached an agreement as to those Plaintiffs whose claims may have fallen outside the limitations period and those Plaintiffs who may have been subject to alleged arbitration agreements. (*See* Doc. 65 at 5-6). Further, the parties contend that at this stage in the litigation, a final determination as to certification of the collective action is premature because the parties have not completed the discovery needed to either support a collective action or alternatively to decertify the collective

action. (*See* Doc. 65 at 3-4). Moreover, the parties state that all of the living Opt-In Plaintiffs signed the Settlement Agreement. The parties also state that one Opt-In Plaintiff who is now deceased was informed of the settlement, agreed to it, and was given the opportunity to object to it before passing away. (*See id.* at 8 n.6).

On balance, the Court finds persuasive the authorities cited by the parties in which jurists on this Court approved a settlement at the conditional certification stage without requiring a final certification prior to approving a settlement. (*See* Doc. 65 at 3 and 3-4 n.3). Also weighing heavily in favor of approval of the settlement is the fact that Plaintiff and all of the Opt-In Plaintiffs agreed to the terms and conditions of the settlement and voiced no objections to it. Upon consideration of the parties' arguments, the Court finds that the approval of the settlement may go forward while this case is in the conditional certification stage.

The second concern the Court raised was the issue of whether the Opt-In Plaintiffs were afforded the ability to consider the proposed settlement and to object to its terms. (Doc. 60 at 3). To resolve this issue, the parties attached signed Settlement Agreements from all of the Opt-In Plaintiffs with the exception of Opt-In Plaintiff Elizabeth Sellers who is deceased. (*See* Doc. 65-1 at 9-29; Doc. 67-1 at 1). Prior to Ms. Sellers' death, Plaintiff's counsel represents that Ms. Sellers "was aware of, and had agreed to the terms of the resolution of this matter. She had worked for Defendant for approximately three weeks, and her damages were less than $50, bringing her total settlement award to the minimum floor of $50." (Doc. 65 at 8 n.6). Counsel's representations are consistent with the language in the Consent to Become Opt-In Plaintiff signed by Ms. Sellers. (*See* Doc. 47-1 at 3). Counsel further represents that she will attempt to pay this sum to Ms. Sellers' estate if one is created or will attempt to pay this sum to a proper beneficiary pursuant to Florida's probate and intestacy laws. (Doc. 65 at 8 n.6).

The Court finds that the Opt-In Plaintiffs' signatures on the Settlement Agreement and counsel's representations concerning Ms. Sellers consent to the settlement sufficient to indicate that all of the Opt-In Plaintiffs were made aware of the terms and conditions of the Settlement Agreement, were afforded an opportunity to object, and have no objection. Due to the issues surrounding Ms. Sellers' interests, however, the Court recommends that Plaintiffs' counsel be required to promptly identify Ms. Sellers' heirs, successors, or assigns so that her portion of the settlement may be paid in accordance with applicable law. If Plaintiffs' counsel is unable to identify a person or entity entitled to Ms. Sellers' share of the settlement within sixty (60) days from the date that the Court approves the settlement, then the Court recommends that at the expiration of the sixty (60) day time period, Ms. Sellers' share of the proceeds revert to and be returned to Defendant through Defendant's counsel. Further, the Court recommends that the Court retain jurisdiction for a period on ninety (90) days as to Ms. Sellers' portion of the settlement only to ensure compliance with the Court's order.[1]

**Fairness and Reasonableness of the Proposed Settlement**

Having resolved the preliminary matters set forth above, the Court now examines the proposed Settlement Agreement. To approve the settlement of the FLSA claim, the Court must determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute" of the claims raised pursuant to the Fair Labor Standards Act ("FLSA"). *Lynn's Food Store, Inc. v.*

---

[1] The parties include a provision in the Settlement Agreement that Plaintiffs would not receive payments until they execute the Settlement Agreement. (*See* Doc. 59-1 at 5). They also attach a proposed Notice Regarding Settlement of FLSA Collective Action to the Settlement Agreement. (*See* Doc. 59-3). Based upon the filing of the Joint Supplemental Brief and Notice of Filing Signature Page of Steven Wood, Plaintiff and Opt-In Plaintiffs (with the exception of Elizabeth Sellers' claim, which the Court has handled separately) have signed the Settlement Agreement. (*See* Doc. 65). Further notice is not, therefore, required. Thus, the Court need not consider these specific provisions of the Settlement Agreement because they are no longer applicable.

*United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); 29 U.S.C. § 216. There are two ways for a claim under the FLSA to be settled or compromised. *Id*. at 1352-53. The first is under 29 U.S.C. § 216(c), providing for the Secretary of Labor to supervise the payments of unpaid wages owed to employees. *Id*. at 1353. The second is under 29 U.S.C. § 216(b) when an action is brought by employees against their employer to recover back wages. *Id*. When the employees file suit, the proposed settlement must be presented to the district court for the district court's review and determination that the settlement is fair and reasonable. *Id*. at 1353-54.

The Eleventh Circuit has found settlements to be permissible when the lawsuit is brought by employees under the FLSA for back wages. *Id*. at 1354. The Eleventh Circuit held that:

> [a lawsuit] provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id*.

Plaintiff alleges that Defendant violated the FLSA by failing to provide proper notice of its intention to claim a tip credit as to Plaintiff and others similarly situated and by requiring Plaintiff and others similarly situated to share the tips they earned working as servers and bartenders with non-tipped employees. (Doc. 59 at 2). Defendant denies these claims. (*Id.*). Even though a *bona fide* dispute exists between the parties, the parties decided to settle this matter. (*See* Doc. 59 at 4). Defendant agrees to pay Plaintiff and Opt-In Plaintiffs $100,787.94 that includes tip-credit damages, liquidated damages, and twenty (20) percent disgorgement of the servers' contributions to the tip pools. (Doc. 59 at 5; *see* Doc. 59-2 at 1 for further

breakdown of the individual payments).[2]  Plaintiffs are to receive full liquidated damages on

their tip-credit damages.  (*Id.* at 4, 7).  The Court finds that the terms and conditions of the

Settlement Agreement and Release of FLSA Claims (Doc. 59-1) are fair and reasonable.

In the Settlement Agreement, Defendant also agrees to pay $49,952.06 in attorney's fees

and also agrees to pay for the cost of mediation.  (Doc. 59-1 at 4-5).[3]  The amount of attorney's

fees and costs were agreed upon separately, and without regard to the amount paid to Plaintiff.

(Doc. 59-1 at 5).  As explained in *Bonetti v. Embarq Management Company*, 715 F. Supp. 2d

1222, 1228 (M.D. Fla. 2009), "the best way to insure that no conflict [of interest between an

attorney's economic interests and those of his client] has tainted the settlement is for the parties

to reach agreement as to the plaintiff's recovery before the fees of the plaintiff's counsel are

considered.  If these matters are addressed independently and seriatim, there is no reason to

assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement."  In

*Bonetti*, Judge Presnell concluded that:

> if the parties submit a proposed FLSA settlement that, (1) constitutes a compromise
> of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of
> settlement, including the factors and reasons considered in reaching same and
> justifying the compromise of the plaintiff's claims; and (3) represents that the
> plaintiff's attorneys' fee was agreed upon separately and without regard to the

---

[2]  In the Joint Motion and the Settlement Agreement, the parties indicate that Plaintiffs are to be
paid $100,787.94, but the total payment attached as Exhibit B to the Settlement Agreement
indicates a total payment of $100,786.94, one dollar less.  (*Compare* Doc. 59 at 5 and Doc. 59-1
at 3, *with* Doc. 59-2 at 1).  The Court sees no reason to delay approval of the settlement based on
this *de minimus* discrepancy and the Court will assume that the amount specified in the
Settlement Agreement controls.

[3]  The Settlement Agreement states that Defendant agrees to pay $49,952.06 in attorney's fees
and agrees to pay the costs of mediation.  (Doc. 59-1 at 4-5).  However, in the Joint Motion for
Approval of Settlement Agreement, the parties indicate that Defendant agrees to pay $49,052.06
in attorney's fees and Defendant also agrees to pay the costs of mediation.  (Doc. 59 at 5).  There
is a discrepancy of $900.00 between these figures.  (*Compare* Doc. 59 at 5, *with* Doc. 59-1 at 4-
5).  The Court finds that the higher amount specified in the Settlement Agreement controls and
that the higher amount of $49,952.06 is fair and reasonable.

amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.

715 F. Supp. 2d at 1228.

In the instant case, a settlement was reached and the attorney's fees were agreed upon without compromising the amount paid to Plaintiff and Opt-In Plaintiffs. (Doc. 59-1 at 5). The Settlement Agreement and Release of FLSA Claims (Doc. 59-1) appears reasonable on its face. Thus, the Court recommends that the FLSA Settlement Agreement and Limited Release (Doc. 59-1) be approved.

**IT IS RESPECTFULLY RECOMMENDED:**

1) That the Joint Motion for Approval of Settlement Agreement and Entry of an Order of Dismissal With Prejudice (Doc. 59) be **GRANTED** and the Settlement Agreement (Doc. 59-1) be approved by the Court as a "fair and reasonable resolution of a *bona fide* dispute" of the FLSA issues.

2) That Plaintiffs' counsel be required to promptly identify Ms. Sellers' heirs, successors, or assigns so that her portion of the settlement may be paid. If Plaintiffs' counsel is unable to identify a person or entity entitled to Ms. Sellers' share of the settlement within sixty (60) days from the date that the Court approves the settlement, then the Court recommends that at the expiration of the sixty (60) day period, Ms. Sellers' share of the proceeds revert to and be returned to Defendant through Defendant's counsel.

3) That the Court retain jurisdiction for a period on ninety (90) days as to any issues related to Ms. Sellers' portion of the settlement only.

4)     The Court further recommends that if the District Court adopts this Report and

Recommendation, that the Clerk of Court be directed to dismiss this action with

prejudice, terminate all pending motions, and close the file.

Respectfully recommended in Chambers in Ft. Myers, Florida on August 24, 2017.


_____

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE


## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and

Recommendation's factual findings and legal conclusions.  A party's failure to file written

objections waives that party's right to challenge on appeal any unobjected-to factual finding or

legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir.

R. 3-1.



Copies furnished to:

Counsel of Record
Unrepresented Parties